THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CASE R. GRZESKIEWICZ, Defendant-Appellee.

Third District    No. 80-210

Opinion filed March 27, 1981.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

As a result of the execution of a search warrant in McDonough County, the defendant, Case R. Grzeskiewicz, was charged with unlawful possession of cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)), unauthorized possession of weapons (Ill. Rev. Stat. 1979, ch. 38, par. 21—6(a)), and possession of a firearm without an identification card (Ill. Rev. Stat. 1979, ch. 38, par. 83—2(a)). Prior to trial, defendant's motion to quash the warrant and suppress evidence was granted. The State appeals.

Since the affidavit is the key element controlling the propriety of the issuance of a search warrant, we set it out here in full:

## COMPLAINT FOR SEARCH WARRANT

Now comes the undersigned affiant, Harold Thompson, and states that he has reasonable cause to believe that the instruments, articles and things as follows: one (1) .38 caliber handgun constitute evidence of or have been used in the commission of the offense of unauthorized possession of weapons (ch. 38, §21—6 of the I.R.S.).

The affiant believes that the foregoing instruments, articles and things are located at Room 1312, Tanner Hall—Western Illinois University—Macomb, McDonough County, Illinois and the person of Case R. Grzeskiewicz.

In support of the foregoing, your affiant states the following facts: On February 1, 1980, at approximately 9:30 a.m., Herbert

Ross, an ordinary citizen and student at Western Illinois University, reported to affiant that he had observed Case R. Grzeskiewicz in Room 1312, Tanner Hall—Western Illinois University, Macomb, McDonough County, Illinois, on January 31, 1980, at approximately 7:30 p.m. and that Grzeskiewicz possessed a .38 caliber handgun while in said room. A records check with the office of Public Safety—W.I.U.—reveals that Grzeskiewicz had no permission to possess said weapon in Tanner Hall, said hall is supported in part with State of Illinois funds.

Wherefore the affiant requests the issuance of a warrant to search the above premises or person.

The affiant, being sworn, says that the matters and facts stated in the complaint are true of his own knowledge, except those matters therein upon information and belief and as to those matters he believes them to be true.

Harold Thompson,
Affiant."

So far as the law applicable to this case is concerned, it is covered by the fourth amendment to the United States Constitution and by the United States Supreme Court cases of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075. This matter is well discussed and analyzed in the Illinois case of *People v. Hammers* (1976), 35 Ill. App. 3d 498.

The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■■ In sum, case law cited above has interpreted the fourth amendment to mean that while an affidavit for a search warrant may be based on hearsay, it must inform the magistrate of: (1) underlying circumstances on which the informant's conclusions are based; and (2) the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. In the case of an ordinary citizen informant, as contrasted with a paid police informer or a criminal, the ordinary citizen informant carries a presumption of reliability. In the case of eyewitness informants, the informant's conclusions may be deemed

believable if the informant's reliability is established or if the informant's statements are otherwise corroborated in the affidavit in a sufficient manner.

■■ In the instant case, the affidavit is defective on its face. What it does not disclose tells more about the insufficiency of the affidavit than what it does disclose.

First of all, while it refers to Herbert Ross as "an ordinary citizen student at Western Illinois University," it furnishes no information of underlying circumstances from which the magistrate could conclude that this assertion had any basis in fact. That is to say, how did the affiant know that Herbert Ross was "an ordinary student at W.I.U."? In short, lacking a recital of these underlying circumstances, the magistrate had no way to test the statement and, hence, had no basis to rely on it. Lacking here is any corroboration as to the status of the informant; also lacking is any corroboration of the informant's statements—a double fault.

Second, the affidavit recites that Herbert Ross had "observed Case R. Grzeskiewicz in Room 1312, Tanner Hall—Western Illinois University, Macomb, McDonough County, Illinois" without in any way indicating that Herbert Ross was even in the room. We are left to speculate as to whether Ross was in the room and, if so, whether he was a guest in the room, a trespasser, or even a burglar. Was he, perhaps, standing in the hall? or looking through the window? The affidavit does not tell us.

Indeed, the affidavit does not intimate in any way as to whom the tenancy of the room belonged or who had a right to be there. Was it the room of Herbert Ross? or of Grzeskiewicz? or of someone else? The affidavit does not tell us.

What was Grzeskiewicz doing in Room 1312? Did he live there? Was he there playing cards? Had he merely stopped in Room 1312 to ask for a cigarette? The affidavit does not tell us. If there was no basis to conclude that Grzeskiewicz would be in that room for any period of time, or if the room belonged to someone else and Grzeskiewicz was merely passing through, there would be no basis for searching it after Grzeskiewicz had left it. The affidavit does not help on this point.

Third, the affidavit recites that Herbert Ross reported to affiant "that Grzeskiewicz possessed a .38 caliber handgun while in said room." The affidavit does not even recite that Herbert Ross *saw* the handgun. It recites that Herbert Ross reported to affiant that Grzeskiewicz "*possessed*" a handgun. From the affidavit, it is impossible to determine how Herbert Ross came by this information that Grzeskiewicz possessed a handgun. He may have seen it. He may have been told about it. He may have merely assumed it. The affidavit doesn't tell us.

Fourth and finally, the recital about the records check is gaseous. Who made the check? Who gave out the information? Would a check in

the office of public safety definitively reveal that Grzeskiewicz had no right to possess a handgun? How is the magistrate to know? The affidavit doesn't tell us.

The affidavit for search warrant in this case is defective on the grounds of insufficiency. The decision of the trial court to quash the search warrant and suppress the evidence seized is accordingly affirmed.

Judgment affirmed.

BARRY and STOUDER, JJ., concur.