THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOMINGO TOVAR, Defendant-Appellant.

First District (1st Division)   No. 85—3021

Opinion filed May 9, 1988.

Paul P. Biebel, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago, (Thomas V. Gainer, Jr., Christopher J. Cummings, and Nancy A. Donahoe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant was convicted of (1) possession of a controlled substance with intent to deliver more than 30 grams of a substance containing cocaine, and (2) possession of more than 500 grams of cannabis with intent to deliver. (Ill. Rev. Stat. 1983, ch. 56½, pars. 1401(a)(2), 705(e).) Defendant was sentenced to concurrent terms of seven years in the penitentiary. The court also made a finding of guilty on a charge of possession of less than 30 grams of heroin on count II, but vacated the judgment based on *People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082. Defendant appeals, contending: (1) he was entitled to an evidentiary hearing on his claim that the affiant's statements in the search warrant affidavit were false; (2) the informant's tip set forth in the complaint for search war-

rant was not sufficient to establish probable cause to search his home; (3) the circumstantial evidence was insufficient to prove defendant's intent to deliver beyond a reasonable doubt; and (4) since both convictions arose from a single act, the less serious conviction should be vacated.

On July 26, 1983, Chicago police detective Frank E. Perry filed a complaint for a search warrant for a 29-year-old white, Hispanic male known as Domingo, who was described as 5 feet 9 inches tall, weighing 155 pounds, and with black hair. The complaint also requested the authority to search the second-floor apartment at 3742 North New England in Chicago. Perry, a police officer for 21 years, stated that he had a conversation with "a reliable informant" on July 26, 1983. Perry knew the informant for five months, during which he provided information regarding narcotics law violations on three occasions. On each of these occasions, Perry acted on the informant's information and recovered contraband shown by the Chicago police department crime laboratory to be, in fact, controlled substances. Also on each occasion, arrests were effected.

The informant told Perry that on July 25, 1983, while he was in the second-floor apartment, the informant purchased two grams of heroin for $200 from a white, Hispanic male, known as Domingo, meeting the description set out above. Domingo took the purchase from a clear plastic bag containing additional folded tin foils of the same shape and size as the informant's purchase, and the plastic bag was in Domingo's possession in the apartment. The informant said that he used a quantity of the brown powder purchased from Domingo, and experienced "the same heroin high" he had experienced in the past when using heroin. The informant had been a regular user of heroin and other controlled substances for the past five years.

Officer Perry testified at trial that he was a detective with the organized crime narcotics section of the Chicago police department. About 6:45 p.m. on July 26, 1983, he and other police officers executed the search warrant. After he explained the search warrant to defendant, he asked defendant if any narcotics were present, and defendant told him to go to the bedroom, where Perry found two bags of white powder, six bags of crushed green plant, a quantity of pills and paper packets of brown powder. Defendant said that the contraband was for his own personal use. Perry also recovered a triple-beam scale, a .38 caliber pistol, $1,446 in currency, and a light bill in defendant's name dated August 10, 1983.

Perry further testified that he had executed more than 100 war-

rants for narcotics and participated in approximately 30 controlled-substance deliveries. He had also observed 200 controlled buys. In his opinion, an amount for personal use would vary from one-half gram to a full gram of cocaine, that is, one use. Personal use of heroin would be from one-quarter gram to one-half gram and personal use with regard to marijuana would be one gram, commonly known as a "joint." He first estimated that the "street value" of the contraband recovered was $42,000, but reduced this amount to $3,500 during cross-examination. He explained that in approximately 95% of the cases where scales were also found, the lab report came back positive for narcotics.

It was established by stipulation that after chemical analysis, a Chicago police department chemist concluded that the two clear plastic bags and two white packets holding white powder had 31.9 grams of a substance containing cocaine. Two paper packets with brown powder were determined to contain 5.25 grams of a substance containing heroin. Three clear plastic bags of crushed green plant, weighing 682 grams, contained marijuana, and along with the contents of three untested bags, would total 1,364 grams.

■ Defendant contends, based on *People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269, that he was entitled to an evidentiary hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, on his claim that the officer-affiant's statements in the search warrant application were false. Under *Franks*, a defendant is entitled to a full evidentiary hearing on his motion to suppress evidence if he makes allegations of the affiant's deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. (*People v. Martine* (1985), 106 Ill. 2d 429, 435, 478 N.E.2d 262.) The supreme court in *Lucente* considered that, since the warrant affidavit was based entirely on information furnished by a confidential informant whom defendant could not interview, defendant's preliminary showing was "in the nature of an alibi, tending to establish that *someone*—either the informant or the officer—fabricated the transaction described in the warrant affidavit." (Emphasis in original.) (*People v. Lucente* (1987), 116 Ill. 2d 133, 148, 506 N.E.2d 1269, 1275.) Emphasizing the difficulties facing a defendant required to establish the falsity of statements supposedly derived from an anonymous and perhaps nonexistent informant, the court said that the standard of proof for establishing the substantial preliminary showing required by *Franks* was somewhere between mere denials and proof by a preponderance of the evidence, *i.e.*, the preliminary burden must be sufficiently rigorous to preclude automatic hearings in every case, but not

so onerous as to be unachievable, and that the trial judge's decision on the issue to a degree will be final. *People v. Lucente* (1987), 116 Ill. 2d 133, 152, 506 N.E.2d 1269, 1276-77.

Determination of whether an alibi-type showing is sufficient in a given case, the court said, would depend upon a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant. (116 Ill. 2d at 152.) By way of example, the court explained that if it could be shown that the informant lied to the officer or the informant's information was substantially false, the likelihood would be greater that the information was not appropriately accepted and its usage exhibited a reckless disregard for truth, especially where the warrant affidavit recited no independent corroboration. In such a case where the defendant's showing refutes the allegations in the warrant affidavit, the court in *Lucente* commented that "the balancing process may well result in a hearing being granted." 116 Ill. 2d at 153.

In *Lucente*, the warrant affidavit stated that an unnamed informant told the police officer that at approximately 8:30 p.m. on the previous evening, he went to an apartment at 3010 South Princeton, where he purchased marijuana. Defendant filed an affidavit that he was not present in his apartment from 6:30 to 10 p.m., but was with his wife and his sister at a location over a mile away. Defendant's motion under *Franks* was supported by affidavits of his wife and sister.

■■ ■ In this case, defendant alleged that no drug transaction took place on July 25 and that he was the only person named Domingo with access to the premises. In an affidavit, defendant stated that on July 25, 1983, he arrived at work at 7:30 a.m., returned home at 4:45 p.m., dined with his wife and children, then left at 6 p.m. to visit friends and shopping areas before he returned home at 10:30 p.m. No one in addition to his wife and their children was present or came to the premises while he was present. Defendant also presented the virtually identical affidavit of his wife.

*Lucente* does not mandate a *Franks* hearing in all factually similar cases. Admittedly, the facts in this case are similar to the facts in *Lucente*, and the facts in *Lucente* were held on review by the supreme court to be sufficient to warrant the trial court's granting of a hearing. However, it does not follow that the trial court's denial of a hearing here must be reversed. In *Lucente*, the court observed

> "that *Franks* is intended to create a *limited* right to veracity challenges. In striking the balance [necessary] ***, the trial judge must keep in mind the presumption of validity of the search warrant and the limited nature of the exception to that

presumption created by *Franks*. The judge should also consider that, in passing on the motion, the guilt or innocence of the defendant is not being determined. The end sought by the motion is the suppression of evidence through the application of the exclusionary rule as a sanction against the officers for an alleged fourth amendment violation. If the motion is denied, the defendant will still be judged by the truth of the case. [Citations.]" (*Lucente*, 116 Ill. 2d at 153.)

Thus, the *Lucente* court concluded:

"Given the unavoidably subjective nature of these determinations, it may well be that in some cases a trial judge will deny a hearing when in fact a warrant was issued on the basis of the false statements. It is also true that the same balancing test may result in an evidentiary hearing being held when none is warranted. So long as the trial court's judgment is exercised within permissible limits, that judgment will not be disturbed." (116 Ill. 2d at 153.)

*Lucente* holds that the defendant made a sufficient showing so that the trial judge could permissibly conclude that an evidentiary hearing was warranted, a conclusion the reviewing court would not disturb. Although the present case and the *Lucente* case both involved a complaint for a search warrant based on a confidential informant's claim that a drug sale had taken place at the defendant's residence, and both defendants sought a *Franks* hearing by setting up an alibi, corroborated in this case by defendant's wife, and in *Lucente* by defendant's wife and sister, we do not believe, in spite of these similarities, that the trial judge here was required to hold an evidentiary hearing.

Similar to *Lucente*, the defendant's affidavits here came from parties with an interest in the case, *i.e.*, the defendant and his wife, which was a factor the *Lucente* court found weakened the defendant's affidavits. Further, the affidavits did not establish an impossibility of the informant having access to the apartment here, but were more in the nature of an "I didn't do it" type of affidavit, specifically found insufficient in *Lucente*. Additionally, there was no evidence in the case before us that the State was evasive or uncooperative, which the court in *Lucente* found could be an important factor in a decision to grant a hearing.

Accordingly, we believe that, on balance, the trial court could permissibly conclude that an evidentiary hearing was not warranted, even though the court in *Lucente* found that the trial court there would have concluded that a hearing was warranted. As noted earlier, this type of result was expressly found by the *Lucente* court to be

both likely and entirely proper. Hence, as the *Lucente* court, we shall not disturb the conclusion of the trial court.

■■ ■ Defendant further contends that the warrant affidavit did not establish probable cause to believe that contraband would be found at his address. This issue is governed by the principles set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, and *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147. As explained by the court in *Tisler*, the Supreme Court in *Gates* held that a judge asked to issue a search warrant may consider hearsay statements if they are reliable as measured by the informant's veracity and his basis of knowledge, but the judge should look to the totality of the circumstances in determining probable cause. Defendant says that the informant's veracity and basis of knowledge was not established here, since the informant was a regular user of heroin who said nothing to indicate familiarity with the premises where the heroin sale allegedly took place. Defendant points out that the officer did not corroborate the information and maintains that providing information on three prior occasions was insufficient to establish a basis for the informant's reliability. *People v. Grzeskiewicz* (1981), 94 Ill. App. 3d 769, 419 N.E.2d 56, furnishes some support for defendant's claim that the affidavit should have contained some statement to indicate familiarity with the premises where the heroin sale took place or to indicate that the seller resided on the premises or that heroin was located on the premises. However, the warrant application in *Grzeskiewicz* did not contain any information to show why the informant was deemed reliable or how the informant came by his information.

In this case, the judge issuing the warrant was informed that the affiant, a 21-year police veteran, considered the informant to be reliable because on three prior occasions the information this informant had provided proved to be reliable. The fact that an informant's information proved accurate and reliable on four previous occasions was found sufficient in *People v. Thomas* (1975), 62 Ill. 2d 375, 381, 342 N.E.2d 383.

■ Regarding the basis of the informant's knowledge, the court in *People v. Bauer* (1981), 102 Ill. App. 3d 31, 37, 429 N.E.2d 568, observed that the most common means of showing knowledge is a positive statement of the informant's personal observation. In this case, the basis of the informant's knowledge is his presence in the home of the defendant, his purchase of drugs at that time, and his subsequent use of the substance to confirm that he had purchased drugs, a fact confirmed by his own experience in using drugs. As the court observed in *Thomas*, further detail might be desirable but is

usually not practicable. We conclude that the totality of the circumstances established probable cause to believe that the suspect had contraband at the address indicated and that the search warrant was properly issued.

■ Defendant next contends that the evidence was insufficient to prove his intent to deliver cocaine and marijuana beyond a reasonable doubt. Since three of the bags apparently were not tested, defendant contends that the evidence showed possession of only 682 grams of marijuana. (See *People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127.) Defendant argues that these amounts are insufficient circumstantial evidence that he possessed the cocaine and marijuana with intent to deliver. He contends that his possession of 31.9 grams of cocaine and 682 grams of marijuana was consistent with personal use. Defendant also states that possession of a scale is consistent with personal use since a user may well wish to know precisely how much he is buying, using, or keeping in stock, and a scale also has uses unrelated to narcotics.

In *People v. Knight* (1985), 133 Ill. App. 3d 248, 259, 478 N.E.2d 1082, the court said that it is a reasonable inference that possession of an amount of contraband in excess of any amount which could be viewed as for personal use is possessed with intent to deliver and found that 364 grams of cannabis and 638 grams of phencyclidine (PCP) were amounts far in excess of any which could normally be intended for personal use. In this case, the amount of marijuana was greater than that in *Knight*. In addition, defendant was in possession of 31.9 grams of cocaine and 5.2 grams of heroin. The fact that the scale was also found, together with a large amount of cash and a .38 caliber handgun, is circumstantial evidence that the contraband was possessed with intent to deliver. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 295, 438 N.E.2d 1282.) Additionally, the evidence of Officer Perry was entitled to some weight. Given the evidence of this case, the trial court was justified in drawing the inference that defendant possessed the contraband with intent to deliver. *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.

■ Finally, defendant contends that his convictions arose from the single act of possession and the less serious conviction should be vacated based on *People v. Hunter* (1984), 124 Ill. App. 3d 516, 549, 464 N.E.2d 659. In *Hunter,* the defendant was convicted of possession of two controlled substances, Talwin and Ritalin, with intent to deliver, and he argued that simultaneous possession of more than one type of controlled substance constituted a single offense for which there could be only one conviction. In that case, the appellate court

directed that the conviction for possession of Ritalin with intent to deliver be vacated.

The State contends that this issue is waived because defendant did not raise it at trial or specify it in his motion for a new trial. However, such issue has been noticed as plain error in *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 488 N.E.2d 1087.

■ We note that defendant was also charged with possession of heroin with intent to deliver, but the trial court found defendant guilty of the lesser included offense of possession. (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b).) Later, the trial court vacated that judgment based on *People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082, which holds that the simultaneous possession of more than one type of controlled substance constitutes a single offense for which there can be only one conviction. The court in *Knight* found that defendant's convictions for possession of cocaine and of PCP arose from the same act, as did his convictions of both possession with intent to deliver cannabis and possession of cannabis, and consequently vacated convictions for possession of cannabis and PCP. 133 Ill. App. 3d at 257-58.

The State argues that although under these cases, defendant cannot be convicted of more than one count of possession of a controlled substance arising under the same statute, in this case defendant has been convicted of two different offenses under two different statutes, and that even though the acts are closely related, they are not the same offense. For example, in *People v. Dunlap* (1978), 59 Ill. App. 3d 615, 375 N.E.2d 989, convictions for possession of marijuana and possession of a controlled substance were upheld.

In *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, our supreme court stated that in the absence of a statutory provision to the contrary, simultaneous possession of more than one type of controlled substance constitutes a single offense. We have considered the argument of the State that the rule of *Manning* does not apply here, where two separate statutes are concerned, and find it persuasive. In *Dunlap* and *Knight*, for example, the court allowed one conviction under the Controlled Substances Act and one conviction under the Cannabis Control Act to stand. Similarly, in *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 488 N.E.2d 1087, the court considered convictions of more than one count under the Controlled Substances Act to be plain error and vacated one such conviction, but also allowed a conviction under the Cannabis Control Act to stand. The trial court fully complied with *Manning* when it allowed only one of the two convictions under the Controlled Substances Act to stand. We conclude that

defendant's separate convictions under the Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) and the Cannabis Control Act (Ill. Rev. Stat. 1983, ch. 56½, par. 705(e)) were proper.

Therefore, the judgment of the circuit court of Cook County is affirmed. As part of our judgment we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed.

O'CONNOR and QUINLAN, JJ., concur.